# EXHIBIT A




February 3, 2021

**VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED**

Scott Grabau
Spreckels Industrial Park LLC
Tanimura and Antle Fresh Foods Inc.
Chief Executive Officer
P.O. Box 4070
Salinas, CA 93912

Kerry L. Varney
Spreckels Industrial Park LLC
Tanimura and Antle Fresh Foods Inc.
Secretary / Agent for Service of Process
P.O. Box 4070
Salinas, CA 93912

Gary Tanimura & Brian Antle
Tanimura and Antle Fresh Foods Inc.
Directors
P.O. Box 4070
Salinas, CA 93912

Gary Tanimura & Brian Antle
Tanimura and Antle Fresh Foods Inc.
Directors
1 Harris Rd.
Salinas, CA 93908

**RE: NOTICE OF VIOLATIONS AND INTENT TO FILE SUIT UNDER THE FEDERAL WATER POLLUTION CONTROL ACT ("CLEAN WATER ACT") (33 U.S.C. §§ 1251 *et seq*.)**

Dear Mr. Varney, Mr. Grabau, Mr. Antle, and Mr. Tanimura

This firm represents California Coastkeeper, Inc., doing business as California Coastkeeper Alliance ("Coastkeeper Alliance"), The Otter Project, Inc. and Monterey Coastkeeper, a program of The Otter Project, Inc., in regard to violations of the Clean Water Act ("CWA") occurring at the Spreckels Industrial Park industrial facility (hereafter "Spreckels") located at 121 Spreckels Blvd., 1 Harris Rd., Spreckels, CA 93962 (the "Facility") with Waste Discharger Identification Number WDID 3 27I014263. The Facility primarily engages in the farm equipment maintenance and fabrication, warehousing, seed storage/research, row crops and farm laborer housing. This letter is being sent to you as the responsible owners, officers, and/or operators of the Facility. Unless otherwise noted, and Kerry Varney, Scott Grabau, Brian Antle, and Gary Tanimura shall collectively be referred to as the "Owners/Operators."

Coastkeeper Alliance is a non-profit public benefit water advocacy organization dedicated to protecting California's coasts and oceans. The Otter Project, Inc. is a non-profit public benefit organization working to protect our watersheds and coastal oceans for the benefit of California sea otters and humans through science-based policy and advocacy. Monterey Coastkeeper is program of the Otter Project, Inc., and a participant in the Coastkeeper Alliance. Collectively herein, these three organizations shall be referred to as ("Coastkeeper & The Otter Project").




Members of these organizations live and recreate near to and in the Salinas River (hereafter "Receiving Waters") into which Spreckels discharges polluted stormwater. As explained in detail below, Spreckels continuously discharges pollutants into the Receiving Waters, in violation of the CWA and the Storm Water Permit or General Permit. Coastkeeper & The Otter Project's members, among other activities, fish, kayak, boat, birdwatch, picnic, hike, bike, recreate, relax and enjoy the wildlife in and around the Salinas River, including the wetlands adjacent to the mouth of the Salinas River, as well as Monterey Bay into which the river flows. Additionally, the members use the Salinas River to engage in scientific study through pollution and habitat monitoring to promote restoration activities. The unlawful discharge of pollutants from the Facility into the Salinas River impairs the Coastkeeper & The Otter Project's members' use and enjoyment of these waters. Thus, the interests of the members have been, are being, and will continue to be adversely affected by Spreckels' failure to comply with the Clean Water Act and the Storm Water Permit.

Spreckels is in ongoing violation of the substantive and procedural requirements of the CWA, 33 U.S.C. § 1251 et seq.; and California's General Industrial Storm Water Permit, National Pollution Discharge Elimination System ("NPDES") General Permit No. CAS000001 Water Quality Order No. 2015-0057-DWQ, and as recently amended by Order No. 2015-0122-DWQ incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling; 2) TMDL Implementation Requirements; and 3) Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use (collectively "General Permit" or "Permit").[1]

Pursuant to Section 309(d) of the Clean Water Act, 33 U.S.C. § 1319(d), and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. § 19.4, each separate violation of the CWA subjects Spreckels to a penalty for all violations occurring during the period commencing five years prior to the date of this Notice Letter. These provisions of law authorize civil penalties of $37,500 per day per violation for all CWA violations. In addition to civil penalties, Coastkeeper & The Otter Project will seek injunctive relief preventing further violations of the Act pursuant to Sections 505(a) and (d) of the Act (33 U.S.C. §§ 1365(a), (d)) and such other relief as permitted by law. Lastly, Section 505(d) of the Act (33 U.S.C. § 1365(d)) permits prevailing parties to recover costs and fees, including attorneys' fees.

The CWA requires that sixty (60) days prior to the initiation of a citizen-enforcement action under Section 505(a) of the CWA (33 U.S.C. § 1365(a)), a citizen enforcer must give notice of its intent to file suit. Notice must be given to the alleged violator, the U.S. Environmental Protection Agency, and the Chief Administrative Officer of the water pollution control agency for the State in which the violations occur. *See* 40 C.F.R. 135.2.

As required by the CWA, this letter provides statutory notice of the violations that have occurred, and continue to occur, at the Facility. 40 C.F.R. § 135.3(a). At the expiration of sixty (60) days from the date of this letter, the Coastkeeper & The Otter Project intend to file suit

[1] Spreckels submitted its most recent Notice of Intent to comply with the General Permit for the Facility on or about July 7, 2015.




under Section 505(a) of the Act (33 U.S.C. § 1365(a)) in federal court against Spreckels for violations of the Act and the General Permit. If you wish to pursue remedies in the absence of litigation, we suggest that you initiate those discussions within the next twenty-five (25) days so that they may be completed before the end of the 60-day notice period.

## I. Background

### A. The Clean Water Act

Congress enacted the CWA in 1972 in order to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251. The CWA prohibits the discharge of pollutants into United States waters except as authorized by the statute. 33 U.S.C. § 1311; *San Francisco Baykeeper, Inc. v. Tosco Corp*., 309 F.3d 1153, 1156 (9th Cir. 2002). The CWA is administered largely through the NPDES permit program. 33 U.S.C. § 1342. In 1987, the CWA was amended to establish a framework for regulating storm water discharges through the NPDES system. Water Quality Act of 1987, Pub. L. 100-4, § 405, 101 Stat. 7, 69 (1987) (codified at 33 U.S.C. § 1342(p)); *see also Envtl. Def. Ctr., Inc. v. EPA*, 344 F.3d 832, 840-41 (9th Cir. 2003) (describing the problem of storm water runoff and summarizing the CWA's permitting scheme). The discharge of pollutants without a NPDES permit, or in violation of a NPDES permit, is illegal. *Ecological Rights Found. v. Pac. Lumber Co*., 230 F.3d 1141, 1145 (9th Cir. 2000).

Much of the responsibility for administering the NPDES permitting system has been delegated to the states. *See* 33 U.S.C. § 1342(b); *see also* Cal. Water Code § 13370 (expressing California's intent to implement its own NPDES permit program). The CWA authorizes states with approved NPDES permit programs to regulate industrial storm water discharges through individual permits issued to dischargers, as well as through the issuance of a single, statewide general permit applicable to all industrial storm water dischargers. 33 U.S.C. § 1342(b). Pursuant to Section 402 of the Act, the Administrator of EPA has authorized California's State Board Water Resource Control Board ("State Board") to issue individual and general NPDES permits in California. 33 U.S.C. § 1342. The Board coordinates with the Central Coast Regional Water Quality Control Board ("Regional Board"), which has shared jurisdiction over the Facility for state and federal water pollution control efforts.

### B. California's General Permit for Storm Water Discharges Associated with Industrial Activities

Facilities discharging, or having the potential to discharge, storm water associated with industrial activities that have not obtained an individual NPDES permit must apply for coverage under the General Permit by filing a Notice of Intent to Comply ("NOI"). General Permit, Standard Condition XXI.A. Facilities must file their NOIs before the initiation of industrial operations. *Id*. Facilities must strictly comply with all of the terms and conditions of the General Permit. A violation of the General Permit is a violation of the CWA.




The General Permit contains three primary and interrelated categories of requirements: (1) discharge prohibitions, receiving water limitations and effluent limitations; (2) Storm Water Pollution Prevention Plan ("SWPPP") requirements; and (3) self-monitoring and reporting requirements. Under the General Permit Facilities must submit Exceedance Response Action Plans ("ERA Report") to the State Board outlining effective plans to reduce pollutants if a Facility reports a pollutant above the Numeric Action Level ("NAL"). An annual NAL exceedance occurs when the average of all the analytical results for a parameter from samples taken within a reporting year[2] exceed the annual NAL value for that parameter. An instantaneous maximum NAL exceedance occurs when two (2) or more analytical results from samples taken for any single parameter within a reporting year exceed the instantaneous maximum NAL value or are outside of the instantaneous maximum NAL range for pH. General Permit XII.A.

### C. Spreckels' Industrial Facility

The Spreckels Facility is located on 121 Spreckels Blvd., 1 Harris Rd., Spreckels, California, adjacent to the Salinas River. The official address on file with the Secretary of State is 1 Harris Rd., Salinas, California 93908, with a mailing address of P.O. Box 4070, Salinas, California 93912. The Facility primarily engages in farm equipment maintenance and fabrication, warehousing and storage, seed storage/research, row crops, and farm laborer housing. According to the Facility's Notice of Intent to Comply with the General Permit ("NOI") the Facility encompasses 150 acres, with 20 acres exposed to storm water. The Facility is bounded to the south by, and directly adjacent to, the Salinas River. Scheduled facility operating hours are 8:00 AM to 5:00 PM Monday through Friday during winter months from Thanksgiving through mid-March, and Monday through Sunday during summer months from the Middle or March to Thanksgiving.

According to the Facility's NOI and Storm Water Pollution Prevention Plan ("SWPPP"), Spreckels operates under Standard Industrial Classification (SIC) Codes: 0723 covering establishments engaged in crop preparation for market, 4231 covering motor transit and freight maintenance, 3499 covering miscellaneous metal manufacturing, 4225 covering warehousing, 0139 covering vegetable crops, and 5148 covering wholesale distribution of fruits and vegetables, and 9999 covering nonclassifiable establishments. Under these SIC codes, the General Permit requires Spreckels to analyze storm water samples for particular parameters, including total suspended solids ("TSS"), oil & grease (O&G), pH, total organic carbon (TOC), temperature, and specific conductance.

Facilities must also sample and analyze for additional parameters identified on a facility specific basis to reflect pollutant source assessment, due to receiving water impairments, or as required by the Regional Board. General Permit, Section XI.B.6. Spreckels is not currently sampling for any additional constituents. The receiving waters are, however, impaired for several constituents, including Chloride, pH, pesticides, PCBs (Polychlorinated biphenyls), nitrate, DDD (Dichlorodiphenyldichloroethane), diazinon, electrical conductivity, and E. coli.

---

[2] A reporting year under the General Permit is July 1 to June 30.




The Facility has four main industrial areas: the maintenance/fabrication yard and adjacent harvest shop (collectively the "harvest shop"), the custom cooling facility, the carton yard, and the seed storage and research facility. The harvest shop contains a fabrication area where welding and steel cutting occurs, and a maintenance area where minor vehicle repair, refueling, and oil and fluid changes take place. Likely pollutants from the harvest shop are oil and grease, fuel, waste oil, and metal particulate. Dirt from the harvest shop, furthermore, is the primary source of TSS pollutant according to the Facility's 2018-2019 ERA Level 2 Technical Report f. The custom cooling facility utilizes cooling lines located outside of the facility to flash cool harvest crops. Approximately six gallons of refrigeration oil are used by the custom cooling facility annually, and the oil drained on a weekly basis. The seed storage and research facility stores, treats, and grows test crops / seeds. Possible pollutants from this area are fungicides, fertilizers, and insecticides. Finally, the carton storage yard is an unpaved area located in the southeast portion of the facility. Trucks enter the carton yard at the north end to collect pallets and load cartons, and exit the yard at the southwest corner. Frequent traffic in the carton yard generates dust and particulates.

Potential pollutants at the Facility include oil and gas, petroleum hydrocarbons and particulates, dust and debris leading to sediment and TSS, sediment, copper, zinc and other metals from welding, repair, and vehicle brakes. Vehicle traffic and storage lead to track-on and track-off of these pollutants including dust and debris, both windblown and settled, which are later carried offsite via storm water flows and storm water discharge. Fluid leaks from vehicles, tire residue from traffic and storage, pollutant storage and transfer from tanks, pumps, fueling, and vehicle loading areas, and the industrial activities in the harvest shop are also potential sources of pollutants at the Facility.

Storm water and non-storm water is captured at the Facility in two catch basins. One basin, servicing the parking areas associated with the on-site truck stop and café, drains into a storm water retention pond. The other catch basin services the remainder of the Facility, which drains into a two sewage treatment ponds (in series) in the dry months, and into the Salinas River in the wet months of the year. The discharge points are identified as SP-1 through SP-5. SP-1 and SP-2, which had previously discharged into the second catch basin servicing the majority of the Facility, are now said to discharge into a nearby pond T&A Pond #4, which overflows into a second retention pond, T&A Pond # 5, if necessary.

## II. Spreckels' Violations of the Act and the General Permit

Based on their review of available public documents, Coastkeeper & The Otter Project are informed and believe that Spreckels is in ongoing violation of both the substantive and procedural requirements of the CWA, and the General Permit. These violations are ongoing and continuous. Consistent with the five-year statute of limitations applicable to citizen enforcement actions brought pursuant to the CWA, Spreckels is subject to penalties for violations of the Act since August 18, 2015. Coastkeeper & The Otter Project expect to identify additional storm




water discharges conveying pollutants to the Receiving Waters in violation of the CWA through further investigation of the Facility and as this matter progresses through the rainy season.

**A. Spreckels' Discharges Storm Water Containing Pollutants in Violation of the General Permit's Discharge Prohibitions, Receiving Water Limitations, and Effluent Limitations**

Spreckels' storm water sampling results provide conclusive evidence of its failure to comply with the General Permit's discharge prohibitions, receiving water limitations and effluent limitations. Self-monitoring reports under the General Permit are deemed "conclusive evidence of an exceedance of a permit limitation." *Sierra Club v. Union Oil*, 813 F.2d 1480, 1493 (9th Cir. 1988).

**1. Applicable Water Quality Standards**

The General Permit requires that storm water discharges and authorized non-storm water discharges shall not cause or threaten to cause pollution, contamination, or nuisance. General Permit, Discharge Prohibition III.C. The General Permit also prohibits discharges that violate any discharge prohibition contained in the applicable Regional Board's Basin Plan or statewide water quality control plans and policies. General Permit, Discharge Prohibition III.D. Furthermore, storm water discharges and authorized non-storm water discharges shall not adversely impact human health or the environment and shall not cause or contribute to a violation of any water quality standards in any affected receiving water. General Permit, Receiving Water Limitations VI.A, VI.B.

Dischargers are also required to prepare and submit documentation to the Regional Board upon determination that storm water discharges are in violation of the General Permit's Receiving Water Limitations. General Permit, Special Condition XX.B. The documentation must describe changes the discharger will make to its current storm water best management practices ("BMPs") in order to prevent or reduce any pollutant in its storm water discharges that is causing or contributing to an exceedance of water quality standards. *Id*.

The California Toxics Rule ("CTR") is an applicable water quality standard under the Permit, the violation of which is a violation of Permit conditions. *Cal. Sportfishing Prot. Alliance v. Chico Scrap Metal, Inc.*, 2015 U.S. Dist. LEXIS 108314, *21 (E.D. Cal. 2015) CTR establishes numeric receiving water limits for toxic pollutants in California surface waters. 40 C.F.R. § 131.38.

The *Water Quality Control Plan for the Central Coastal Basin* ("Basin Plan") also sets forth water quality standards and prohibitions applicable to Spreckels' storm water discharges. The Basin Plan identifies existing and potential Beneficial Uses for water bodies, such as the Salinas River, including but not limited to, municipal, agricultural, contact and non-contact water recreation, wildlife habitat, warm and cold freshwater habitat, migration of aquatic organisms, and commercial and sport fishing. Basin Plan, Table 2-1.




**2. Applicable Effluent Limitations**

Dischargers are required to reduce or prevent pollutants in their storm water discharges through implementation of best available technology economically achievable ("BAT") for toxic and nonconventional pollutants and best conventional pollutant control technology ("BCT") for conventional pollutants. Conventional pollutants include Total Suspended Solids, Oil & Grease, pH, Biochemical Oxygen Demand and Fecal Coliform. 40 C.F.R. § 401.16. All other pollutants are either toxic or nonconventional. 40 C.F.R. §§ 401.15-16.

Under the General Permit, benchmark levels established by the EPA ("EPA Benchmarks") serve as guidelines for determining whether a facility discharging industrial storm water has implemented the requisite BAT and BCT. *Santa Monica Baykeeper v. Kramer Metals*, 619 F.Supp.2d 914, 920, 923 (C.D. Cal 2009).

The following EPA benchmarks have been established for pollutants discharged by Spreckels: total suspended solids—100 mg/L, oil & grease—15 mg/L, and total organic carbon ("TOC") — 100 mg/L, pH—6 to 9 S.U., and biochemical oxygen demand—30 mg/L ("BOD").

**3. Spreckels's Storm Water Sample Results**

The Spreckels SWPPP states that storm water at the Facility is captured by two catch basins. One catch basin drains the parking area associated with the Tanimura and Antle Café and truck stop, while the remainder of the Facility is drained by the other catch basin system. The SWPPP, furthermore, identifies five discharge locations at the Facility, SP-1 through SP-5. SP-4 services the parking area associated with the Tanimura and Antle Café and drains into the storm water pond at the Facility. The other discharge locations collect water from the remainder of the Facility.

The truck stop basin drains stormwater into a storm water pond. The other system drains to a sewage treatment pond (a two-pond system, in series) during the dry months of the year, and into the Salinas River during the wet months of the year. Switching between the sewage pond as a discharge point and the Salinas River as a discharge point is completed by the manual operation of valves. The ERA Level 2 Technical Report for the Facility details plans for SP-1 and SP-2 (scheduled to have been completed by October 15, 2019), whereby water collected at those points will be redirected via pumps to a nearby catch basin associated with site farm worker apartments, which will drain into the unlined T&A Pond #4, which in turn overflows into T&A Pond #5. According to the ERA Level 2 Technical Report, then, SP-1 and SP-2 will no longer constitute sources of storm water discharges once these measures are put in place. It appears, however, that SP-3 and SP-5 will continue to discharge as detailed by the SWPPP, first into the two-pond series during dry months, and then into the Salina's River during wet months.

Except as provided in Section XI.C.4 of the Permit, samples shall be collected from each drainage area at all discharge locations. The samples must be: a) Representative of storm water




associated with industrial activities and any commingled authorized non-storm water discharges; or, b) Associated with the discharge of contained storm water.

The following discharges of pollutants from the Facility have violated the discharge prohibitions, receiving water limitations, and effluent limitations of the General Permit.

**a. Discharges of Storm Water Containing Total Suspended Solids (TSS) at Concentrations in Excess of Applicable EPA Benchmark Value**

| Date | Parameter | Concentration in Discharge (mg/L) | EPA NAL Value (mg/L) | EPA Instantaneous. NAL Value (mg/L) | Discharge Point |
|---|---|---|---|---|---|
| 1/16/2020 | TSS | 233 | 100 | 400 | SP-3 |
| 1/16/2020 | TSS | 1170 | 100 | 400 | SP-5 |
| 2/18/2019 | TSS | 1310 | 100 | 400 | SP-1 |
| 2/8/2019 | TSS | 1120 | 100 | 400 | SP-2 |
| 2/8/2019 | TSS | 4570 | 100 | 400 | SP-5 |
| 1/18/2017 | TSS | 155 | 100 | 400 | SP-2 |
| 1/18/2017 | TSS | 148 | 100 | 400 | SP-3 |
| 1/18/2017 | TSS | 261 | 100 | 400 | SP-5 |
| 3/11/2016 | TSS | 160 | 100 | 400 | SP-5 |
| 3/11/2016 | TSS | 810 | 100 | 400 | SP-2 |

Spreckels' sample results demonstrate violations of the General Permit's discharge prohibitions, receiving water limitations, and effluent limitations set forth above. Coastkeeper & The Otter Project are informed and believe that Spreckels has known that its storm water contains pollutants at levels exceeding General Permit standards since at least February 3, 2016. Of these ten self-reported NAL overages, five of them have been well in excess of the instantaneous maximum NAL requiring an ERA report if two samples per reporting year contain an exceedance. Here, Spreckels self-reported two instantaneous exceedances in the 2015-2016, three exceedances in 2016-2017, three in 2018-2019, and two so far in 2019-2020. Coastkeeper and The Otter Project believe that had the Owners/Operators collected sufficient storm water samples each reporting year, more instantaneous maximum NAL exceedances would have been reported.

Coastkeeper & The Otter Project allege that such violations occur each time storm water or non-storm water discharges from the Facility. Attachment A hereto, sets forth the specific rain dates on which the Coastkeeper & The Otter Project alleges that Spreckels has discharged storm water containing impermissible levels of impermissible levels of total suspended solids in violation of the General Permit. General Permit, Discharge Prohibitions III.C and III.D, Receiving Water Limitations VI.A, VI.B.




Because Spreckels recorded a sampling average above Numeric Action Levels at 270 mg/L for total suspended solids during the 2015-2016 reporting year, the Facility entered ERA Level 1 for total suspended solids for the 2015-2016 reporting year. As noted above the average sampling result for total suspended solids in the 2015-2016 reporting year was over twice the NAL during the one testing event (three fewer than required) reported by Spreckels during that year. In the 2016-2017 reporting year Spreckels again reported an annual average well above the NAL for total suspended solids putting the Facility into ERA Level 2 for that parameter. The recorded average for total suspended solids in the 2016-2017 reporting year was 129.8 mg/L and an ERA Level 2 report was submitted to the State Board in December 2017. In the 2017-2018 reporting year not a single storm water sample analysis was available for the Facility on the State Board's Storm Water Multiple Application and Report Tracking System ("SMARTS") database. In the 2018-2019 reporting year with only three samples taken and uploaded to SMARTS across two qualifying storm events, the Facility averaged 2,333 mg/L. For the 2019-2020 reporting year, two samples have been taken from different discharge points during a single rain event, with the average TSS recorded at 701 mg/L, seven times the NAL.

### 4. Spreckels Has Failed to Implement BAT and BCT

Dischargers must implement adequate BMPs that fulfill the BAT/BCT requirements of the CWA and the General Permit to reduce or prevent discharges of pollutants in their storm water discharges. General Permit, Effluent Limitation V.A. To meet the BAT/BCT standard, dischargers must implement minimum BMPs and any advanced BMPs set forth in the General Permit's SWPPP Requirements provisions where necessary to reduce or prevent pollutants in discharges. *See* General Permit, Sections X.H.1-2. Sampling results of orders of magnitude in excess of benchmark levels, as reported by Spreckels, are evidence that Spreckels does not have BMPs that achieve BAT/BCT (*Santa Monica Baykeeper v. Kramer Metals, Inc.* 619 F. Supp. 2d 914. 925 (C.D. Cal., 2009.)

Spreckels has failed to implement the minimum BMPs required by the General Permit, including good housekeeping requirements; preventive maintenance requirements; spill and leak prevention and response requirements; dust and debris control and suppression, material handling and waste management requirements; erosion and sediment controls; employee training and quality assurance; and record keeping. General Permit, Sections X.H.1(a–g).

Spreckels has further failed to implement advanced BMPs necessary to reduce or prevent discharges of pollutants in its storm water sufficient to meet the BAT/BCT standards, including: exposure minimization BMPs; containment and discharge reduction BMPs; treatment control BMPs; or other advanced BMPs necessary to comply with the General Permit's effluent limitations. There are yet to be sufficient advanced BMPs currently in use at the Facility. General Permit, Sections X.H.2.

Each day the Owners/Operators have failed to develop and implement BAT and BCT at the Facility in violation of the General Permit is a separate and distinct violation of Section 301(a) of the CWA (33 U.S.C. § 1311(a)). The violations described above were at all times in violation of




Section X of the General Permit. the General Permit. Accordingly, the Owners/Operators have been in violation of the BAT and BCT requirements at the Facility every day since at least February 3, 2016.

### 5. Spreckels Has Failed to Develop and Implement an Adequate Storm Water Pollution Plan.

The General Permit requires dischargers to develop and implement a site-specific SWPPP. General Permit, Section X.A. The SWPPP must include, among other elements: (1) the facility name and contact information; (2) a site map; (3) a list of industrial materials; (4) a description of potential pollution sources; (5) an assessment of potential pollutant sources; (6) minimum BMPs; (7) advanced BMPs, if applicable; (8) a monitoring implementation plan; (9) annual comprehensive facility compliance evaluation; and (10) the date that the SWPPP was initially prepared and the date of each SWPPP amendment, if applicable. *See id.*

Dischargers must revise the Facility's SWPPP whenever necessary, and certify and submit on SMARTS their SWPPP within 30 days whenever the SWPPP contains significant revisions(s); and, certify and submit via SMARTS any non-significant revisions not more than once every three (3) months in the reporting year. General Permit, Section X.B. There are two available SWPPPs available on SMARTS for the Facility, once dated June 29, 2007 and one dated December 16, 2016 despite the fact that the Facility has experienced two reporting years well above the NAL for total suspended solids since 2016.

Last, the General Permit requires a permittee whose discharges violate the General Permit's Receiving Water Limitations to implement additional BMPs or other control measures, in order to attain compliance with the receiving water limitation identifying what additional BMPs will be implemented to achieve water quality standards, along with an implementation schedule, which would then be incorporated into the Facility SWPPP. 2015 General Permit Section I.E. Information available to Coastkeeper & The Otter Project indicates that the Facility Owners/Operators failed to implement any additional BMPs as required by the General Permit. As such, the Owners and/or Operators are in daily violation of this requirement of the General Permit.

Coastkeeper & The Otter Project's investigation indicates that Spreckels has been operating with an inadequately developed or implemented SWPPP in violation of General Permit requirements since at least February 3, 2016. Spreckels has failed to sufficiently evaluate the effectiveness of its BMPs and to revise its SWPPP as necessary, resulting in the Facility's unlawful effluent limitation violations. The Facility's most recent ERA Report indicated further housekeeping and infrastructure BMPs to be implemented by October 2019, without any implementation of advanced BMPs. Still, exceedances have continued as demonstrated through the sampling reports as recent as this year. Due to the lack of sampling over the past five years, Coastkeeper & The Otter Project suspect other violations would have been self-reported given there were over 200 total days of precipitation of over 0.1 inch measured at a nearby weather gauge over the past five years. *See* Attachment A. As such, the Owners and/or Operators are in daily violation of this




requirement of the General Permit.

Each day the Owners/Operators failed to develop and implement an adequate SWPPP is a violation of the General Permit. The SWPPP violations described above were at all times in violation of Section X of the General Permit. The Owners/Operators have been in violation of these requirements at the Facility every day since at least February 3, 2016.

**6. Spreckels has Failed to Develop, Implement, and/or Revise an Adequate Monitoring Implementation Plan.**

Section X.I of the General Permit requires Facility Owners/Operators to develop and implement a Monitoring Implementation Plan ("MIP"). The primary objective of the monitoring and reporting requirements is to detect and measure the concentrations of pollutants in a facility's discharge to ensure compliance with the Storm Water Permit's Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations. General Permit Fact Sheet, Section II.J(1). Monitoring undertaken must therefore determine whether pollutants are being discharged, and whether response actions are necessary, and must evaluate the effectiveness of BMPs. *See* General Permit, Section I.J(56).

Section XI.A of the Permit requires dischargers to visually observe and collect samples of stormwater from all locations where stormwater is discharged. Under Section XI.B of the Permit, the Facility Owners/Operators are required to collect at least two (2) samples from each discharge location at their Facility during the first half of the reporting year, and then again during the second half of the reporting year. Storm water samples must be analyzed for total suspended solids, pH, oil & gas, and other pollutants that are likely to be present in the Facility's discharges in significant quantities, and as required under the General Permit pursuant to a Facility SIC Code. *See* General Permit, Section XI.B(6).

The Facility Owners/Operators have been conducting operations at the Facility with an inadequately developed, implemented, and/or revised MIP. Upon information and belief, the Facility Owners/Operators sampled storm water just once during each of the 2015-2016 and 2016-2017 reporting years, zero times during 2017-2018 reporting year, just twice during the 2018-2019 reporting year, and so far just once during the 2019-2020 reporting year in violation of Section XI.B. of the General Permit, despite ample storm events in each of those years. *See* Attachment A. In each of the above reporting years the Facility Owner/Operators claimed in their Annual Report there were not enough qualifying storm events, even so in the 2017-2018 reporting year, where no sample results were uploaded to SMARTS. No storm water sampling results are publicly available for the 2020-2021 reporting year.

The Facility Owners'/Operators' failure to conduct sampling and monitoring as required by the General Permit demonstrates that it has failed to develop, implement, and/or revise an MIP that complies with the requirements of Section XI of the General Permit. Every day that the Facility Owners/Operators conduct operations in violation of the specific monitoring requirements of the General Permit, or with an inadequately developed and/or implemented MIP, is a separate and




distinct violation of the General Permit, and the CWA. The Facility Owners/Operators have been in daily and continuous violation of the General Permit's MIP requirements every day since at least February 3, 2016. These violations are ongoing, and Coastkeeper & The Otter Project will include additional violations when information becomes available, including specifically continuing violations of the General Permit monitoring requirements. *See* General Permit, Section XI. The Facility Owners/Operators are subject to civil penalties for all violations of the Clean Water Act occurring since February 3, 2016.

### 7. Failure to Comply with the Storm Water Permit's Reporting Requirements

Section XVI of the General Permit requires a permittee to submit an Annual Report to the Regional Board by July 1 of each year. The requirements include a compliance checklist, an affirmation of visual observations and sampling results, an explanation for any non-compliance of requirements within the reporting year, an identification, including page numbers and/or sections, of all revisions made to the SWPPP within the reporting year; and, the date(s) of the Annual Evaluation. Sampling results must be input into the SMARTS database shortly after receipt of the lab reports of sample analysis. The lab reports must also be uploaded into the SMARTS portal.

As mentioned above storm water sample analysis for the 2017-2018 reporting year is not available on SMARTS, and in other reporting years an insufficient number of samples were taken and analyzed, despite strong evidence of sufficient rain events occurring in the area. *See* Attachment A. Thus, information available to Coastkeeper & The Otter Project suggests, that the Facility Owners/Operators have violated the procedural requirements of Section XVI of the General Permit.

Last, information available to Coastkeeper & The Otter Project indicates that the Facility Owners/Operators have failed to accurately report their non-compliance with the General Permit and correctly report stormwater sampling analysis compliance in the Facility's Annual Reports. Further, the Facility ERA Reports resulting from samples recorded in the 2015-2016, 2016-2017, and 2018-2019 did not call for sufficient implementation of BMPs, as evidenced by subsequent storm water sampling results. This despite storm water heavily polluted with total suspended solids well in excess of the NAL in those reporting years. Most recently and during the 2018-2019 and 2019-2020 years, the Facility self-reported total suspended solids results that were again multiples over the NAL, including exceedances occurring after the October, 2019 date set to implement the additional BMPs outlined in the 2018-2019 ERA Level 2 Technical Report. No revisions have been made to the SWPPP to include additional BMPs since 2016, in violation of the General Permit. An ERA Report was again due from the Facility Owners/Operators by January 1, 2021, but thus far an ERA Report has not been submitted to the State Board via SMARTS. As such, the Owners/Operators are in daily violation of the General Permit. *See* General Permit, Section XVI. Every day the Facility Owners/Operators conduct operations at the Facility without an adequate MIP, to ensure proper monitoring and reporting, as required by the General Permit is a separate and distinct violation of the General Permit and Section 301(a) of




the CWA, 33 U.S.C. §1311(a) subject to penalties. The Facility Owners/Operators have been in daily and continuous violation of the General Permit's monitoring and reporting requirements every day since at least February 3, 2016. These violations are ongoing, and Coastkeeper & The Otter Project will include additional violations when information becomes available.

## III. Persons Responsible for the Violations

Coastkeeper & The Otter Project put Spreckels on notice that it is the entity responsible for the violations described above. If additional persons are subsequently identified as also being responsible for the violations set forth above, Coastkeeper & The Otter Project put Spreckels on formal notice that it intends to include those persons in this action.

## IV. Name and Address of Noticing Party

The name, mailing address, and telephone number of the noticing party is as follows:

California Coastkeeper Alliance
Erin Clancy, Staff Attorney
1100 11th Street, 3rd Floor
Sacramento, CA 95814

The Otter Project & Monterey Coastkeeper
Steve Shimek
CEO, The Otter Project
Program Manager, Monterey Coastkeeper
P.O. Box 269
Monterey, CA 93942

## V. Counsel

Coastkeeper & The Otter Project have retained legal counsel to represent it in this matter. Please direct all communications to:

Anthony M. Barnes
J. Thomas Brett
Aqua Terra Aeris Law Group
4030 Martin Luther King Jr. Way
Oakland, CA 94609
917-371-8293




## VI. Conclusion

Coastkeeper & The Otter Project believe this Notice of Violations and Intent to File Suit sufficiently states grounds for filing suit. We intend to file a citizen suit under Section 505(a) of the CWA against Spreckels and its agents for the above-referenced violations upon the expiration of the 60-day notice period, unless Spreckels and Coastkeeper & The Otter Project agree to formally extend this notice period in light of ongoing pandemic. Again, if you wish to pursue remedies in the absence of litigation, we suggest that you initiate those discussions within the next twenty-five (25) days so that they may be completed before the end of the 60-day notice period.

Sincerely,

Anthony M. Barnes
J. Thomas Brett
ATA Law Group
Counsel for California Coastkeeper Alliance,
The Otter Project, and Monterey Coastkeeper




**SERVICE LIST**

***VIA US MAIL***

U.S. Attorney General
U.S. Attorney General's Office
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001

Jane Nashida
Acting Administrator
U.S. Environmental Protection Agency
William Jefferson Clinton Building
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460 (1101A)

Eileen Sobeck
Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, California 95812-0100

Deborah Jordan
Acting Regional Administrator
U.S. Environmental Protection Agency
Region IX
75 Hawthorne Street
San Francisco, California 94105

John M. Robertson, Executive Officer
Central Coast Regional Water Quality Control Board
895 Aerovista Place, Suite 101
San Luis Obispo, CA 93401-7906

ATTACHMENT A

Days with Precipitation above 0.10 Inch

| STATION | NAME | DATE | PRCP |
|---|---|---|---|
| USW00023233 | SALINAS AIRPORT, CA US | 12/24/2015 | 0.28 |
| USW00023233 | SALINAS AIRPORT, CA US | 1/5/2016 | 0.47 |
| USW00023233 | SALINAS AIRPORT, CA US | 1/6/2016 | 0.55 |
| USW00023233 | SALINAS AIRPORT, CA US | 1/17/2016 | 0.12 |
| USW00023233 | SALINAS AIRPORT, CA US | 1/18/2016 | 0.66 |
| USW00023233 | SALINAS AIRPORT, CA US | 1/19/2016 | 1.2 |
| USW00023233 | SALINAS AIRPORT, CA US | 1/22/2016 | 0.4 |
| USW00023233 | SALINAS AIRPORT, CA US | 1/31/2016 | 0.39 |
| USW00023233 | SALINAS AIRPORT, CA US | 2/17/2016 | 0.33 |
| USW00023233 | SALINAS AIRPORT, CA US | 2/18/2016 | 0.11 |
| USW00023233 | SALINAS AIRPORT, CA US | 3/4/2016 | 0.29 |
| USW00023233 | SALINAS AIRPORT, CA US | 3/5/2016 | 1.3 |
| USW00023233 | SALINAS AIRPORT, CA US | 3/6/2016 | 0.25 |
| USW00023233 | SALINAS AIRPORT, CA US | 3/7/2016 | 0.69 |
| USW00023233 | SALINAS AIRPORT, CA US | 3/11/2016 | 0.3 |
| USW00023233 | SALINAS AIRPORT, CA US | 3/13/2016 | 0.39 |
| USW00023233 | SALINAS AIRPORT, CA US | 3/14/2016 | 0.11 |
| USW00023233 | SALINAS AIRPORT, CA US | 3/21/2016 | 0.11 |
| USW00023233 | SALINAS AIRPORT, CA US | 4/10/2016 | 0.11 |
| USW00023233 | SALINAS AIRPORT, CA US | 4/22/2016 | 0.22 |
| USW00023233 | SALINAS AIRPORT, CA US | 10/16/2016 | 0.14 |
| USW00023233 | SALINAS AIRPORT, CA US | 10/28/2016 | 1.26 |
| USW00023233 | SALINAS AIRPORT, CA US | 11/20/2016 | 0.19 |
| USW00023233 | SALINAS AIRPORT, CA US | 11/26/2016 | 0.41 |
| USW00023233 | SALINAS AIRPORT, CA US | 11/27/2016 | 0.21 |
| USW00023233 | SALINAS AIRPORT, CA US | 12/8/2016 | 0.2 |
| USW00023233 | SALINAS AIRPORT, CA US | 12/10/2016 | 0.24 |
| USW00023233 | SALINAS AIRPORT, CA US | 12/15/2016 | 0.74 |
| USW00023233 | SALINAS AIRPORT, CA US | 12/23/2016 | 0.18 |
| USW00023233 | SALINAS AIRPORT, CA US | 1/3/2017 | 0.8 |
| USW00023233 | SALINAS AIRPORT, CA US | 1/4/2017 | 0.87 |
| USW00023233 | SALINAS AIRPORT, CA US | 1/7/2017 | 0.37 |
| USW00023233 | SALINAS AIRPORT, CA US | 1/8/2017 | 0.77 |
| USW00023233 | SALINAS AIRPORT, CA US | 1/10/2017 | 0.42 |
| USW00023233 | SALINAS AIRPORT, CA US | 1/11/2017 | 0.12 |
| USW00023233 | SALINAS AIRPORT, CA US | 1/12/2017 | 0.19 |
| USW00023233 | SALINAS AIRPORT, CA US | 1/18/2017 | 0.21 |
| USW00023233 | SALINAS AIRPORT, CA US | 1/19/2017 | 0.18 |
| USW00023233 | SALINAS AIRPORT, CA US | 1/20/2017 | 0.66 |
| USW00023233 | SALINAS AIRPORT, CA US | 1/21/2017 | 0.19 |
| USW00023233 | SALINAS AIRPORT, CA US | 1/22/2017 | 0.9 |
| USW00023233 | SALINAS AIRPORT, CA US | 1/23/2017 | 0.12 |
| USW00023233 | SALINAS AIRPORT, CA US | 2/2/2017 | 0.13 |
| USW00023233 | SALINAS AIRPORT, CA US | 2/3/2017 | 0.12 |
| USW00023233 | SALINAS AIRPORT, CA US | 2/6/2017 | 0.16 |
| USW00023233 | SALINAS AIRPORT, CA US | 2/9/2017 | 0.86 |

ATTACHMENT A

Days with Precipitation above 0.10 Inch

| | | | |
|---|---|---|---|
| USW00023233 | SALINAS AIRPORT, CA US | 2/16/2017 | 0.21 |
| USW00023233 | SALINAS AIRPORT, CA US | 2/17/2017 | 0.91 |
| USW00023233 | SALINAS AIRPORT, CA US | 2/20/2017 | 1.72 |
| USW00023233 | SALINAS AIRPORT, CA US | 3/5/2017 | 0.5 |
| USW00023233 | SALINAS AIRPORT, CA US | 3/20/2017 | 0.21 |
| USW00023233 | SALINAS AIRPORT, CA US | 3/22/2017 | 0.27 |
| USW00023233 | SALINAS AIRPORT, CA US | 4/7/2017 | 0.24 |
| USW00023233 | SALINAS AIRPORT, CA US | 4/13/2017 | 0.23 |
| USW00023233 | SALINAS AIRPORT, CA US | 4/16/2017 | 0.19 |
| USW00023233 | SALINAS AIRPORT, CA US | 10/20/2017 | 0.13 |
| USW00023233 | SALINAS AIRPORT, CA US | 11/9/2017 | 0.11 |
| USW00023233 | SALINAS AIRPORT, CA US | 11/27/2017 | 0.34 |
| USW00023233 | SALINAS AIRPORT, CA US | 1/3/2018 | 0.29 |
| USW00023233 | SALINAS AIRPORT, CA US | 1/8/2018 | 0.61 |
| USW00023233 | SALINAS AIRPORT, CA US | 1/9/2018 | 0.41 |
| USW00023233 | SALINAS AIRPORT, CA US | 1/24/2018 | 0.15 |
| USW00023233 | SALINAS AIRPORT, CA US | 1/25/2018 | 0.12 |
| USW00023233 | SALINAS AIRPORT, CA US | 2/26/2018 | 0.13 |
| USW00023233 | SALINAS AIRPORT, CA US | 3/1/2018 | 0.65 |
| USW00023233 | SALINAS AIRPORT, CA US | 3/2/2018 | 0.17 |
| USW00023233 | SALINAS AIRPORT, CA US | 3/16/2018 | 0.39 |
| USW00023233 | SALINAS AIRPORT, CA US | 3/17/2018 | 0.23 |
| USW00023233 | SALINAS AIRPORT, CA US | 3/20/2018 | 0.57 |
| USW00023233 | SALINAS AIRPORT, CA US | 3/22/2018 | 0.22 |
| USW00023233 | SALINAS AIRPORT, CA US | 4/6/2018 | 0.28 |
| USW00023233 | SALINAS AIRPORT, CA US | 4/7/2018 | 1.11 |
| USW00023233 | SALINAS AIRPORT, CA US | 4/15/2018 | 0.11 |
| USW00023233 | SALINAS AIRPORT, CA US | 4/16/2018 | 0.28 |
| USW00023233 | SALINAS AIRPORT, CA US | 10/3/2018 | 0.67 |
| USW00023233 | SALINAS AIRPORT, CA US | 11/21/2018 | 0.75 |
| USW00023233 | SALINAS AIRPORT, CA US | 11/23/2018 | 0.24 |
| USW00023233 | SALINAS AIRPORT, CA US | 11/28/2018 | 0.67 |
| USW00023233 | SALINAS AIRPORT, CA US | 11/29/2018 | 1.04 |
| USW00023233 | SALINAS AIRPORT, CA US | 12/5/2018 | 0.21 |
| USW00023233 | SALINAS AIRPORT, CA US | 12/16/2018 | 0.55 |
| USW00023233 | SALINAS AIRPORT, CA US | 12/24/2018 | 0.16 |
| USW00023233 | SALINAS AIRPORT, CA US | 12/25/2018 | 0.14 |
| USW00023233 | SALINAS AIRPORT, CA US | 1/5/2019 | 0.14 |
| USW00023233 | SALINAS AIRPORT, CA US | 1/6/2019 | 0.17 |
| USW00023233 | SALINAS AIRPORT, CA US | 1/16/2019 | 0.41 |
| USW00023233 | SALINAS AIRPORT, CA US | 1/21/2019 | 0.15 |
| USW00023233 | SALINAS AIRPORT, CA US | 1/31/2019 | 0.47 |
| USW00023233 | SALINAS AIRPORT, CA US | 2/2/2019 | 0.5 |
| USW00023233 | SALINAS AIRPORT, CA US | 2/4/2019 | 1.12 |
| USW00023233 | SALINAS AIRPORT, CA US | 2/8/2019 | 0.4 |
| USW00023233 | SALINAS AIRPORT, CA US | 2/9/2019 | 0.12 |
| USW00023233 | SALINAS AIRPORT, CA US | 2/10/2019 | 0.71 |

ATTACHMENT A

Days with Precipitation above 0.10 Inch

| | | | |
|---|---|---|---|
| USW00023233 | SALINAS AIRPORT, CA US | 2/14/2019 | 0.18 |
| USW00023233 | SALINAS AIRPORT, CA US | 2/15/2019 | 0.54 |
| USW00023233 | SALINAS AIRPORT, CA US | 2/17/2019 | 0.2 |
| USW00023233 | SALINAS AIRPORT, CA US | 3/2/2019 | 0.12 |
| USW00023233 | SALINAS AIRPORT, CA US | 3/7/2019 | 0.17 |
| USW00023233 | SALINAS AIRPORT, CA US | 3/9/2019 | 0.13 |
| USW00023233 | SALINAS AIRPORT, CA US | 3/10/2019 | 0.35 |
| USW00023233 | SALINAS AIRPORT, CA US | 3/20/2019 | 0.38 |
| USW00023233 | SALINAS AIRPORT, CA US | 4/5/2019 | 0.18 |
| USW00023233 | SALINAS AIRPORT, CA US | 5/15/2019 | 0.29 |
| USW00023233 | SALINAS AIRPORT, CA US | 5/16/2019 | 0.17 |
| USW00023233 | SALINAS AIRPORT, CA US | 5/18/2019 | 0.27 |
| USW00023233 | SALINAS AIRPORT, CA US | 5/19/2019 | 0.51 |
| USW00023233 | SALINAS AIRPORT, CA US | 11/26/2019 | 0.45 |
| USW00023233 | SALINAS AIRPORT, CA US | 11/27/2019 | 0.37 |
| USW00023233 | SALINAS AIRPORT, CA US | 11/30/2019 | 0.24 |
| USW00023233 | SALINAS AIRPORT, CA US | 12/1/2019 | 0.4 |
| USW00023233 | SALINAS AIRPORT, CA US | 12/2/2019 | 1.21 |
| USW00023233 | SALINAS AIRPORT, CA US | 12/4/2019 | 0.5 |
| USW00023233 | SALINAS AIRPORT, CA US | 12/7/2019 | 0.29 |
| USW00023233 | SALINAS AIRPORT, CA US | 12/8/2019 | 0.58 |
| USW00023233 | SALINAS AIRPORT, CA US | 12/25/2019 | 0.44 |
| USW00023233 | SALINAS AIRPORT, CA US | 12/29/2019 | 0.3 |
| USW00023233 | SALINAS AIRPORT, CA US | 1/16/2020 | 0.72 |
| USW00023233 | SALINAS AIRPORT, CA US | 1/26/2020 | 0.11 |
| USW00023233 | SALINAS AIRPORT, CA US | 3/14/2020 | 0.11 |
| USW00023233 | SALINAS AIRPORT, CA US | 3/15/2020 | 0.37 |
| USW00023233 | SALINAS AIRPORT, CA US | 3/16/2020 | 0.49 |
| USW00023233 | SALINAS AIRPORT, CA US | 3/22/2020 | 0.39 |
| USW00023233 | SALINAS AIRPORT, CA US | 3/25/2020 | 0.11 |
| USW00023233 | SALINAS AIRPORT, CA US | 4/5/2020 | 0.9 |
| USW00023233 | SALINAS AIRPORT, CA US | 4/6/2020 | 0.18 |
| USW00023233 | SALINAS AIRPORT, CA US | 11/7/2020 | 0.19 |
| USW00023233 | SALINAS AIRPORT, CA US | 12/11/2020 | 0.16 |
| USW00023233 | SALINAS AIRPORT, CA US | 12/13/2020 | 0.13 |
| USW00023233 | SALINAS AIRPORT, CA US | 12/17/2020 | 0.17 |
| USW00023233 | SALINAS AIRPORT, CA US | 1/22/2021 | 0.23 |
| USW00023233 | SALINAS AIRPORT, CA US | 1/24/2021 | 0.14 |
| USW00023233 | SALINAS AIRPORT, CA US | 1/27/2021 | 2.55 |
| USW00023233 | SALINAS AIRPORT, CA US | 1/23/2021 | 0.47 |